**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
TONY E. CHAMBERS,              )
                               )
              Plaintiff,       )
                               )
       v.                      )           1:18CV134
                               )
ROBERT P. GRIMESEY, et al.,    )
                               )
              Defendants.      )
```

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application for Leave to Proceed <u>In Forma Pauperis</u> (Docket Entry 1) (the "Application"), filed in conjunction with his pro se Complaint (Docket Entry 2). At a hearing on the Application, the Court (per the undersigned United States Magistrate Judge) informed Plaintiff that it would defer ruling on the Application to permit Plaintiff an opportunity to file an Amended Complaint on or before April 9, 2018, addressing matters discussed at the hearing. (<u>See</u> Minute Entry dated Mar. 9, 2018.) On April 9, 2018, Plaintiff filed an Amended Complaint. (<u>See</u> Docket Entry 5.) For reasons set forth below, the Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of this action, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.

<u>LEGAL BACKGROUND</u>

"The federal *in forma pauperis* ['IFP'] statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting <u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing [IFP] d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." <u>Nagy v. Federal Med. Ctr. Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the IFP statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint falls short when it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1] The Court may also anticipate affirmative defenses that clearly appear on the face of the complaint. Nasim, 64 F.3d at 955.

## DISCUSSION

Plaintiff's initial Complaint names Robert P. Grimesey, Jr. and Mark Johnson as defendants. (See Docket Entry 2 at 1-2.) It alleges that Plaintiff suffered discrimination, including in the form of harassment and subjection to a hostile work environment, because of his race and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17 ("Title

_____

[1] Although "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

VII"). (See Docket Entry 2 at 3-4.) Plaintiff specifies his disability as "anxiety/depression and mood disorders[, and c]hronic illness."[2] (Id. at 4.) The Complaint also references termination of employment, failure to promote, failure to accommodate Plaintiff's disability, as well as unequal terms and conditions of employment, including specifically retaliation in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to 2000d-7 ("Title VI"). (Id.)

As invited at the hearing on the Application, Plaintiff filed a timely Amended Complaint. (See Docket Entry 5.) The Amended Complaint substitutes Moore County Schools (the "Defendant") for Robert Grimesey, Jr. and Mark Johnson as the defendant. (See Docket Entry 5 at 1-2.) The Amended Complaint alleges that Plaintiff suffered discrimination, including in the form of harassment and subjection to a hostile work environment, because of his race and disability in violation of Title VII. (See id. at 3-4.) The Amended Complaint does not, however, specify Plaintiff's disability. (See id.) The Amended Complaint again references termination of employment, failure to accommodate Plaintiff's disability, as well as unequal terms and conditions of employment, including specifically retaliation in violation of Title VI. (Id.)

---

[2] For ease of reading, this Opinion utilizes standardized spelling and capitalization.

According to the Amended Complaint:

In September 2015 [Plaintiff] was promoted to West Pine Middle as the Technology assistant. [Plaintiff] was the only African American employee in the IT Department. The school where [Plaintiff] was assigned only had 2 African American Males including [Plaintiff]. The other African American male was a janitor. After working only 3 weeks at the school [Plaintiff] was placed in [a] storage room. The media specialist did not want to work with [Plaintiff] or along side [him] in the media center. [Plaintiff] was not given a job description for the first 7 months of working in the position. [Plaintiff] reached out numerous times to IT personnel for assistance in working at this place of employment. All [Plaintiff's] efforts end[ed] in a negative result. [Plaintiff] was terminated after filing grievances in July 2017. [Plaintiff] believes [he] was fired because [he] was African American and fil[ed] grievances for hostile working environment, retaliation for filing labor board/[Occupational Safety and Health Administration ("OSHA")] complaints and Health department complaints, [Equal Employment Opportunity Commission (the "EEOC")] complaints, Office of Civil Rights complaints, U.S. Department of Education complaints, Department of public instructions complaints, [and] Labor Board retaliation division complaints. [Plaintiff's] work space was not clean for 2 school terms. [Plaintiff] became sick because of [his] workspace and the employer refused to accommodate [his] medical needs because [he] was African American. A doctor recommended twice that [Plaintiff] have an air filter placed in [his] workspace. The employer refused. [Plaintiff] was sent home on administrative leave, transferred place of employment and eventually fired in July 2017, after 4 employee evaluations in one school year. [Plaintiff] was given directives that [he] felt were discriminatory. No other IT employee had to go through any of the situations [Plaintiff] went through. [Plaintiff] was not assigned a lunch break while [he] was working at the middle school. These adverse actions were deliberate and retaliatory. After the Labor Board/OSHA [i]nspected [Plaintiff's] work place the first time in Feb. 2017, it is [Plaintiff's] belief the employer sprayed some harsh chemical into the air of [his] workspace while [Plaintiff] was occupying the space deliberately to harm [him]. A couple of weeks prior to them spraying this harsh chemical in [Plaintiff's] work space they sprayed it only after

clearing the entire building for safety. [Plaintiff] was
also denied access of [his] personnel file and records 3
times at the middle school by the principal and 3 or 4
times at the central office by the Director of Human
Resource. [Plaintiff] believes these actions were
discriminatory and in retaliation for filing with the
EEOC and the federal and state agency. [Plaintiff] was
told by law [he] could not see [his] personnel file.
[Plaintiff] has enclosed [as] attachments [the] original
complaints sent to school, board of education and EEOC
and employee's evaluations that [he] was given that [he]
feels was a violation of Title [VI] and Title [VII].

(Id. at 6.)

Regarding Plaintiff's employee evaluations from Defendant, the

Amended Complaint also alleges that "some of the directives [he]

felt were hostile and in violation of [his] constitutional rights

and in retaliation of filing grievances." (Id. at 5.)  The Amended

Complaint further expresses:

[Plaintiff's] belief that . . . [he] was terminated
for filing grievances and complaints.  Complaints about
[his] employment and concerns [his] daughters experience.
[Plaintiff] was the only African American employee in the
IT department. . . .  The timing of [Plaintiff's]
complaints and the adverse reaction leads [Plaintiff] to
believe that [Defendant] deliberately discriminated,
retaliated and created a hostile working
environment. . . .

(Id.)

As an attachment to the Amended Complaint, Plaintiff included

his "original complaint sent to Human Resource Director, the EEOC,

and the Board of Education." (Id.; see also Docket Entry 5-2.)

This attachment provides extensive factual matter surrounding a

conflict between Plaintiff and his co-worker/supervisor, Melody

Thomas, which allegedly created a "hostile working environment."

(Docket Entry 5 at 6; <u>see also</u> Docket Entry 5-2 at 1-4.)  The same attachment also gives factual information pertaining to complaints that Plaintiff made to Defendant regarding discriminatory actions allegedly directed towards his daughters on their school bus.  (<u>See</u> Docket Entry 5-2 at 5-7.)[3]

As to "workplace harassment/hostile working environment concerns" (<u>id.</u> at 1), Plaintiff alleges the following:

> After working 3 weeks at West Pine Middle [Plaintiff] went to Dr. Calcutt [the school principal] to express some concerns and frustrations [Plaintiff] was having with Melody Thom[as]. . . .
>
> One of the first concerns [Plaintiff] had was that when [he] got to school in September[,] Melody Thomas would tell [him] periodically and almost on a daily basis how upset she was about the decision made to get rid of "her" media assistant.  She would often times make these comments if [Plaintiff] asked her a question or if other staff employees were present.  [Plaintiff] often felt unwelcome, devalued and unappreciated.  Melody Thomas told [Plaintiff] from the beginning she was not going to train [him] for anything; she felt the IT department should be responsible for that. [Plaintiff's] only problem w[as] that Melody Thomas would often tell [Plaintiff] to do things or instruct [him] to do things that she refused to help [him] do. . . .  Often and too many times when [Plaintiff] would step away from a stool [he] was sitting in[,] Melody would put a telephone in the chair and tell [Plaintiff] the girl or "her" assistant she had last year (J. Wolfe) would never sit down [and] that th[e] stool was never used to sit down in . . . .  [Plaintiff] felt Melody Thomas did not want [him] in her space or working environment at West Pine Middle. . . .

---

[3] Although Plaintiff details specific slurs and other discriminatory actions allegedly directed towards his daughters, repetition of those allegations remains unnecessary for purposes of this Opinion.

-7-

> [Plaintiff and] Dr. Calcutt [had] many meeting[s] and
> [Plaintiff] express[ed] to [Dr. Calcutt that he] felt the
> environment was hostile and harassing because Melody
> Thomas did not like the Media assistant position being
> taken away and the new Technology position not covering
> a lot of the media center needs. Dr. Calcutt told
> [Plaintiff] to be patient and she wanted to set up a
> meeting with Melody Thomas and [Plaintiff].

(Id. at 1-2.)

At a later meeting between Dr. Calcutt, Melody Thomas, and Plaintiff, both Melody Thomas and Plaintiff voiced their concerns. (Id. at 2.) In an apparent attempt to help reconcile the conflict, Dr. Calcutt asked Plaintiff to work in "the AV storage room." (Id.) Plaintiff stated that he "did not have a problem with it; [he] just did not believe it resolved anything." (Id.) According to Plaintiff, further conflict with Melody Thomas occurred throughout the rest of the school year and into the next. (Id. at 2-3.) At the beginning of the new school year, Plaintiff met with the new school principal, Mr. Massengill, other staff, and Melody Thomas. (Id. at 3.) Regarding the meeting, Plaintiff has alleged:

> Mr. Massengill wanted [Plaintiff] to know that the issues
> that went on last school year were because there was no
> instructional leadership present. Mr. Massengill felt
> there were somethings Melody Thomas and [Plaintiff] could
> have done differently. [Mr. Massengill] went on to ask
> [Plaintiff] if [Plaintiff] knew who [his] boss was. [Mr.
> Massengill] asked [Plaintiff] twice if [Plaintiff] "knew
> who [his] boss was" then [Mr. Massengill] wanted
> [Plaintiff] to know that he was [Plaintiff's] boss.
> [Plaintiff] tried to assure [Mr. Massengill] that it did
> not matter who [Plaintiff's] boss was [Plaintiff] was
> working to the best of [his] ability and professionalism
> is always [his] standard. Melody Thomas chimed in to the
> fact that [Plaintiff] had intimidated her and Mr.
> Massengill implied that Dr. Calcutt had confirmed that

> [Plaintiff] did intimidate her. [Plaintiff] felt this
> meeting was intimidating and the fact [he] was doing a
> lot of technology work by [himself] became evident that
> the new principal had made a decision to that fact.
> [Plaintiff was] astonished by the fact that the principal
> ha[d] only been here for a short time and already ha[d]
> voiced his opinion about [the] assault on [Plaintiff's]
> daughter and now the facts that occurred outside [Mr.
> Massengill's] presence and tenure with [Defendant].
> [Plaintiff was] beginning to wonder and feel as if [he
> was] being retaliated for filing complaints and making
> complaints which [we]re [his] legal rights.

(Id.)

As to the issues concerning Plaintiff's daughters' treatment, Plaintiff alleges that, in May 2016, his daughters informed him of the first incident of discriminatory conduct on their school bus. (Id. at 5.) According to Plaintiff, he "immediately" notified officials employed with Defendant, to include Dr. Calcutt. (Id.) Plaintiff alleges that Defendant "failed to provide a safe environment on the bus" (id. at 6), as well as that Defendant did not handle the situations or Plaintiff's complaints adequately. (See id. at 5-7.) Plaintiff did not provide the specific date that he filed a complaint with the Department of Education in either his Complaint or Amended Complaint. (See generally Docket Entries 2, 5.) However, Plaintiff's Complaint alleges that he "filed [his] first formal and direct grievance" regarding these incidents in May 2016. (Docket Entry 2 at 7.)

A. Race Discrimination Claims

As an initial matter, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC before

filing suit under Title VII.  Smith v. First Union Nat. Bank, 202
F.3d 234, 247 (4th Cir. 2000).  Moreover, the plaintiff must do so
"within one hundred and eighty days after the alleged unlawful
practice occurred."  42 U.S.C. § 2000e-5(e)(1).  "A plaintiff's
EEOC charge defines the scope of h[is] subsequent right to
institute a civil suit."  Smith, 202 F.3d at 247 (quoting Evans v.
Technologies Applications and Serv. Co., 80 F.3d 954, 962-63 (4th
Cir. 1996)).

Here, Plaintiff attached a timely filed EEOC charge to his
Complaint.  (See Docket Entry 2 at 10-12.)[4]  However, the charge
alleges only that Defendant retaliated against Plaintiff for his
complaint regarding "environmental work conditions" and does not
include any facts indicating discrimination based on race.  (Id. at
11.)  The United States Court of Appeals for the Fourth Circuit has
held that "[o]nly those discrimination claims stated in the initial
charge, those reasonably related to the original complaint, and
those developed by reasonable investigation of the original
complaint may be maintained in a subsequent Title VII lawsuit."
Evans, 80 F.3d at 963.  In other words, the "factual allegations
made in the formal litigation must correspond to those set forth in

_____

    [4] Plaintiff also included the first page of two previously
filed EEOC charges with his Amended Complaint (see Docket Entry 5-1
at 1-2).  However, because Plaintiff included only the first page
of each charge, the Court cannot determine the content of those
charges.  Plaintiff also failed to submit details of those charges
in either the Complaint or Amended Complaint.  (See generally
Docket Entries 2, 5.)

the administrative charge." <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 509 (4th Cir. 2005).

In this matter, nothing in the EEOC charge indicates that Plaintiff's race discrimination claims "reasonably relate[]," <u>Evans</u>, 80 F.3d at 963, to his EEOC retaliation charge. Moreover, Plaintiff's EEOC charge lacks any allegations to support race discrimination. (<u>See</u> Docket Entry 2 at 11-12.) In any event, even permitting the conclusion that Plaintiff's racial discrimination claims could have been "developed by reasonable investigation," <u>Evans</u>, 80 F.3d at 963, his claims would still fail as a matter of law.

To begin, under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 28 U.S.C. § 2000e-2(a). "Discrimination based upon race is generally presented in two distinct scenarios: a racially hostile work environment or disparate treatment." <u>James v. University of N.C. Health Care Hosp.</u>, No. 1:18CV339, 2018 WL 4518700, at *5 (M.D.N.C. Sept. 20, 2018) (unpublished). Here, Plaintiff appears to allege both types of discrimination.

However, in either scenario, "Title VII . . . does not set forth a 'general civility code for the American workplace.'"

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)
(quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80
(1998)).  To the contrary, Title VII requires an employee claiming
discrimination to show that an adverse employment action occurred
"because of" the employee's race.  42 U.S.C. § 2000e-2(a)(1); see
also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141
(2000) (explaining that "an individual alleging disparate treatment
based upon a protected trait must produce sufficient evidence upon
which one could find that the protected trait . . . actually
motivated the employer's decision").  Further, although prohibited
discrimination includes harassment, such claims require proof of a
"workplace permeated with discriminatory [e.g., race-based]
intimidation, ridicule, and insult that is sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment."  Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 21 (1993).

Here, the Amended Complaint offers no facts showing that
Plaintiff suffered mistreatment because of his race.  It indicates
that Plaintiff "was the only African American employee in the IT
Department[, t]he school where [Plaintiff] was assigned only had
[two] African American [m]ales including [Plaintiff, and t]he other
African [A]merican male was a janitor" (Docket Entry 5 at 6), but
it does not give the race of any female in the school, particularly
Melody Thomas or Dr. Calcutt (see generally Docket Entries 5, 5-2).

Moreover, none of Plaintiff's descriptions regarding interactions between himself and his co-workers/supervisors reflect any racial animus or, for that matter, any identifiable racial component. (See Docket Entry 5 at 5-6; see also Docket Entry 5-2 at 1-4.)

As the Fourth Circuit has explained, the allegation that a supervisor of one race criticized the job performance of an employee of another race, standing alone, does not present a plausible claim of discrimination. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 282 (4th Cir. 2000) (declaring that the "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races"). Similarly, the Amended Complaint's allegations about Plaintiff's co-worker's/supervisor's rudeness, lack of support, and unwillingness to listen do not establish a hostile work environment claim, as the Fourth Circuit has ruled that "rude treatment by [co-workers]," Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006), "callous behavior by [one's] superiors," Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), and "a routine difference of opinion and personality conflict with [one's] supervisor," Hawkins, 203 F.3d at 276, do not, by themselves, support a race-based Title VII hostile work environment claim.

In sum, the Amended Complaint fails to state a claim for race-based discrimination under Title VII.

B. Disability Discrimination Claims

Plaintiff has also alleged that Defendant discriminated against him based on his disability under Title VII and, further, that Defendant failed to accommodate his disability. (See Docket Entry 2 at 4, 6; see also Docket Entry 5 at 3, 4.) Although the Complaint and Amended Complaint purport to bring these claims pursuant to Title VII, as Title VII does not prohibit disability-based discrimination, liberal construction permits the conclusion that Plaintiff intended to assert these disability claims under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

Although Plaintiff did not specify his disability in the Amended Complaint (see Docket Entry 5 at 4), his Complaint describes his disability as "anxiety/depression and mood disorders[, and c]hronic illness" (Docket Entry 2 at 4). In addition, it alleges:

> It is [Plaintiff's] belief the conditions [he] endured for over a 2 year period of time was extreme and unlawful conduct (retaliatory). [Plaintiff] since suffer[s] from anxiety, depression, and ha[s] been diagnosed with a mood disorder. High blood pressure, diabetes, osteoarthritis in [Plaintiff's] jaw, nerve issues in [his] facial and sinus area. All due to the exposure of black mold, asbestos, peeling lead paint, extreme heat and no water source work space. [M]ice dropping and mice urine exposure.

(Id. at 6.) The Amended Complaint states that Plaintiff "became sick because of [his] workspace and [Defendant] refused to accommodate [his] medical needs because [he] was African-American." (Docket Entry 5 at 6.) It also alleges that "[a] doctor

-14-

recommended twice that [Plaintiff] have an air filter placed in [his] workspace," but "[Defendant] refused." (<u>Id.</u>; <u>see also</u> Docket Entry 2 at 9 (alleging that a doctor, "twice by letter to [Defendant,]" requested that Plaintiff have an air filter).)

As a general matter, the record lacks any indication that Plaintiff brought his disability claims before the EEOC. The EEOC charge in the record makes no mention of Plaintiff's disability. (<u>See</u> <u>id.</u> at 11, 12.) As with the Title VII race discrimination claim, Plaintiff's ADA claim must reasonably relate to his filed EEOC charge. <u>See</u> <u>Feldman v. Law Enf't Assocs. Corp.</u>, 779 F. Supp. 2d 472, 485-86 (E.D.N.C. 2011), <u>aff'd</u>, 752 F.3d 339 (4th Cir. 2014). Here, even treating Plaintiff's disability claims as "reasonably related" to his retaliation claim or as matters subject to "develop[ment] by reasonable investigation," <u>Evans</u>, 80 F.3d at 963, his claims would still fail as a matter of law.

Although Plaintiff has alleged that his disabilities resulted from the environmental conditions of his workspace while in Defendant's employment (Docket Entry 2 at 6), he has not alleged in either the Complaint or Amended Complaint that he informed Defendant of those disabilities (<u>see generally</u> Docket Entries 2, 5). Defendant could not have discriminated against Plaintiff based on his disabilities if it did not know about Plaintiff's disabilities. <u>See, e.g.</u>, <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 884 (6th Cir. 1996) ("[T]he defendant cannot discriminate

'because of' a disability if it has no knowledge of the disability."). Similarly, the ADA does not require an employer to accommodate disabilities of which it lacks notice. See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346-47 (4th Cir. 2013). "The burden to provide notice is not an onerous one[, and] the employee does not need to mention the ADA or use the phrase 'reasonable accommodation,' but [he must] inform the employer of both the disability and the employee's need for accommodations for that disability." Schneider v. Giant of Md., LLC, 389 F. App'x 263, 270 (4th Cir. 2010) (emphasis omitted) (citing EEOC v. Federal Express Corp., 513 F.3d 360, 369 (4th Cir. 2008)).

Plaintiff has alleged that Defendant "refused to accommodate his medical needs because he was African-American" (Docket Entry 5 at 6); however, he has failed to provide any factual information in support of that conclusory allegation (see generally Docket Entries 2, 5). As discussed above, Plaintiff has not alleged any facts showing that he suffered mistreatment because of his race.

In addition, the Amended Complaint asserts that Defendant failed to accommodate Plaintiff's disabilities by refusing to provide Plaintiff with an air filter for his workspace. (See Docket Entry 5 at 6.) Because Plaintiff has failed to sufficiently allege that Defendant knew of his disabilities, it follows that Defendant would not have known that the air filter request, even if doctor-recommended, represented a request for an accommodation for

Plaintiff's disabilities.  See Schneider, 389 F. App'x at 269 (observing that ADA claims fail unless the plaintiff informs employer that accommodation request arises from a disability).

Accordingly, Plaintiff has failed to state a claim and the Court should dismiss Plaintiff's disability discrimination claims.

C. Retaliation Claims

Plaintiff's Amended Complaint further lacks any factual allegations to support a retaliation claim under either Title VI or Title VII.  The same standard applies to both Title VI and Title VII claims of retaliation.  See Howerton v. Board of Educ. of Prince George's Cty., CIV. A. No. TDC-14-0242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015) (citing Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003)).  In that regard, "[a plaintiff] must show (1) that []he engaged in protected activity; (2) that [the defendant] took a material adverse employment action against [him;] and (3) that a causal connection existed between the protected activity and the adverse action."  Id.

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Also, "[e]ach Federal department and agency which is empowered to extend Federal financial assistance to any program or activity . . . is authorized

and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability . . . ." 42 U.S.C. § 2000d-1. In light of these mandates,

> [t]he Department of Education has promulgated a regulation, 34 C.F.R. Part 100, which provides:
>
> (e) Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI] or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

Peters, 327 F.3d at 314 (quoting 34 C.F.R. § 100.7(e)) (emphasis omitted).

Title VI includes an implied right of action for an individual alleging retaliation because that individual complained of race discrimination. See Peters, 327 F.3d at 316–21. Moreover, "[t]he fact that [P]laintiff was not the target of the underlying discrimination does not defeat h[is] claim. The question is simply whether []he opposed a practice that []he reasonably believed violated Title VI." Palmer v. Penfield Cent. Sch. Dist., 918 F. Supp. 2d 192, 199 (W.D.N.Y. Jan. 22, 2013) (citing Peters, 327 F.3d at 319); see also Kimmel v. Gallaudet Univ., 639 F. Supp. 2d 34, 43 (D.D.C. Aug. 4, 2009) (concluding that the plaintiff's "alleged advocacy on behalf of minority students [wa]s a protected activity sufficient to support a retaliation claim" under Title VI).

Here, although Plaintiff has alleged that he filed a formal complaint and later suffered adverse actions, he has failed to show that a causal connection existed between that filing and the adverse actions. Based on the only dates alleged, Plaintiff reported the discriminatory conduct directed towards his daughters to Defendant in May 2016 (<u>see</u> Docket Entry 5-2 at 5) and also "filed [his] first formal and direct grievance" in May 2016 (<u>see</u> Docket Entry 2 at 7). However, Defendant did not terminate Plaintiff until July 2017, over one year later. (<u>See</u> Docket Entry 5 at 6.) This gap of more than one year between Plaintiff's opposition to discrimination and his termination does not provide the temporal proximity needed to establish causation. <u>See, e.g.</u>, <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation."); <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.").

In addition, Plaintiff asserts that "some of the directives" in his employee evaluations came "in retaliation of filing grievances." (Docket Entry 5 at 8, ¶ 4.) However, the first two of the four submitted evaluations reveal overall positive feedback,

with only one area of negative feedback in each regarding punctuality. (See Docket Entry 5-3 at 1-8.) Plaintiff did not receive negative feedback in other areas of his work performance until his evaluation in March 2017, although even that evaluation included positive feedback. (See id. at 9-12.) Assuming the March 2017 evaluation constituted adverse action, its date fell nearly one year after Plaintiff's report of discrimination, too long a period to permit an inference of causation. See Maisha v. University of N.C., 641 F. App'x 246, 251 (4th Cir. 2016) (holding that a "gap of nearly one year does not provide the temporal proximity needed to establish causation").

Title VII likewise prohibits an employer from retaliating against an employee because said employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In the EEOC charge, Plaintiff alleged retaliation after "he filed a complaint regarding environmental work conditions with the division of the North Carolina Department of Labor that enforces OSHA." (Docket Entry 2 at 11-12.) OSHA conducted an inspection and shortly thereafter, Plaintiff received a negative performance evaluation. (See id. at 11.) A few days later, Plaintiff called out sick "on a day to day basis for about 30 consecutive days due to the

environmental work conditions impacting [his] health." (Id. at 11-12.) One month after he returned to work, Plaintiff received notice that he would either be terminated or transferred. (See id.) A week later, "[Defendant] notified [Plaintiff] that [he] was being transferred . . . ." (Id. at 12.) "[Plaintiff] filed complaints . . . about these events." (Id.) "On or about July 20, 2017, [Defendant] notified [Plaintiff] . . . that [his] employment was terminated." (Id. at 11.)

As a general matter, Title VII does not create a cause of action for unsafe work conditions. See, e.g., Gurish v. Ohio Dep't of Mental Retardation and Developmental Disabilities, No. 1:10CV2292, 2012 WL 3649359, at *2 (N.D. Ohio Aug. 23, 2012) (unpublished) ("[The p]laintiff alleged within his EEOC charge that he was retaliated against 'after reporting an unsafe work environment.' . . . [The p]laintiff's actions for which he alleges retaliation within his EEOC charge are not considered protected activity under Title VII . . . ."); Rodriguez v. Beechmont Bus Serv. Inc., 173 F. Supp. 2d 139, 150 (S.D.N.Y. 2001) (dismissing Title VII claim for retaliation in response to cooperation with OSHA investigation, because "unsafe working conditions are not made unlawful under Title VII"); Harper v. Hunter Coll., No. 95 CIV. 10388(JFK), 1999 WL 147698, at *3 (S.D.N.Y. Mar. 15, 1999) (unpublished) (finding that the plaintiff did not state claim for retaliation for "whistleblowing in connection with his report of

unsafe working conditions" because "whistleblowing activity of this nature is not protected under Title VII" (internal quotation marks omitted)).

To the extent that Plaintiff harbored a belief that "[]he was opposing unlawful race discrimination [which] (1) was held in subjective good faith; and (2) is objectively reasonable," he could satisfy the protected activity requirement. Peters, 327 F.3d at 321 (regarding Title VII claim). "'Objectively reasonable' means reasonable in light of the facts of the case and current, substantive caselaw." Wainright v. Carolina Motor Club, Inc., No. 1:03CV1185, 2005 WL 1168463, at *10 (M.D.N.C. Apr. 27, 2005) (unpublished) (citing Peters, 327 F.3d at 321).

The Amended Complaint alleges that Plaintiff was "terminated after filing grievances." (Docket Entry 5 at 6.) It also alleges that he "believe[s] [he] was fired because [he] was African American." (Id.) However, given the foregoing resolution of his race-based discrimination claim, the notable absence of any facts supporting racial animus in his description of the conflict with Melody Thomas and subsequent environmental problems with his work assignment, and the amount of time that had elapsed since he filed complaints on his daughters' behalf, it would not be objectively reasonable to believe that his actions in complaining about unsafe work conditions qualified as opposition to racial discrimination.

In sum, even with liberal construction, Plaintiff's Title VI and Title VII retaliation claims fail as a matter of law.

<u>CONCLUSION</u>

Plaintiff's allegations do not state a viable claim for race discrimination, disability discrimination, or retaliation.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed <u>In Forma Pauperis</u> (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted.

      /s/ L. Patrick Auld        

**L. Patrick Auld**
**United States Magistrate Judge**

February 19, 2019